UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:03CV-166-R

KIMBERLY BURGESS, et al.                                                    PLAINTIFFS

v.

PADUCAH TRANSIT AUTHORITY, et al.                                DEFENDANTS

**MEMORANDUM OPINION**

Defendants have moved for summary judgment (Dkt. # 19). Plaintiffs responded (Dkt. # 24), Defendants replied (Dkt. # 51), both parties filed supplemental replies (Dkt. # 82 and Dkt. #83) and this matter is now ripe for decision. For the reasons given below, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**.

**BACKGROUND**

Plaintiffs Kimberly Burgess, Karen Glisson, Shelly Turner and Alpha Mae Tate were all full-time employees of the Paducah Area Transit System (P.A.T.S.) until mid-2002, when Burgess, Glisson and Turner were all dismissed and Tate was reduced to part-time status. In July 2003, they brought suit against the Paducah Transit Authority, as well as their supervisor, Gary Kitchin (General Manager of P.A.T.S.), Kim Adair (Operations Manager), and eight members of the board of the Paducah Transit Authority, the municipal corporation that operates P.A.T.S., all in their individual and official capacities. The complaint alleges essentially that their terminations and/or reductions in work hours were undertaken as retaliation for: (i) Plaintiffs' decisions to report mechanical problems with some of the vehicles being used by P.A.T.S. and to report alleged falsification of documents relating to safety inspections of those vehicles; (ii) Plaintiffs' "refusal to violate the law by falsely reporting that vehicles passed safety

inspections, reporting vehicles that were not roadworthy and lacking repair" (Complaint, Dkt. #1, at 8); and (iii) "exercising their First Amendment Right of Speech, Association and Assembly, reporting PATS violations of 49 C.F.R. §396.3 et seq., the laws of the Commonwealth of Kentucky including KRS §523.100 and KRS 517.050." (*Id.*)  The complaint also alleges the torts of wrongful discharge, "intentional interference with employment relations," defamation, outrage and "humiliation and embarrasment (sic)." (*Id.* at 10-12). Plaintiffs seek a permanent injunction "precluding Defendants from interfering with Plaintiff's First Amendment Rights" as well as "[r]einstatement of their employment, including retroactive reinstatement of any benefits and salary to which they may be entitled;" compensatory and punitive damages in the amount of $10,000,000.00; and costs and expenses.  Defendants argue that Plaintiffs have failed to allege facts sufficient to make out a prima facie case of retaliation to support their §1983 claim and that each of Plaintiffs' Kentucky-law tort claims fail.  Also, Defendants assert that the eight board members named in the Complaint acted with qualified immunity and are thus entitled to judgment as a matter of law.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

To narrow the issues and thereby make analysis of the motion for summary judgment clearer, the court will first address several preliminary issues: the claims of Alpha Mae Tate, a Plaintiff who was not terminated from her position at P.A.T.S.; the Plaintiffs' claims against the eight board members; and the Plaintiffs' claims against the Paducah Transit Authority as an entity.

### *Claims of Alpha Mae Tate*

In the original complaint, Ms. Tate was included as a plaintiff in the claims for relief under 42 U.S.C. §1983 and the torts of intentional interference with employment relations,

outrage, humiliation and embarrassment, and the request for a permanent injunction. The complaint alleges that Tate "suffered an adverse employment action as a result of a significant reduction in her assigned work, duties and hours." (Complaint, Dkt. # 1 at 11.) In their motion for summary judgment, Defendants note that in Ms. Tate's deposition, she testified that the change from full-time to part-time status was actually at her request. (Deposition, Dkt. # 43, at 37). She also testified that she was never ordered to alter any documents (*Id*. at 40). In Plaintiffs' response to the motion, they neither rebut this testimony nor provide alternate grounds for Ms. Tate's claims. Therefore, the court holds that Ms. Tate's claims should be dismissed.

### *Claims against the Paducah Transit Authority*

Plaintiffs have also asserted claims against the Paducah Transit Authority ("Authority"). Defendants challenge the claims against the Authority on the basis that Plaintiffs have failed to allege *respondiat superior* liability for the tort claims or a policy fairly attributable to the municipality on the §1983 claims. (Motion for Summary Judgment, Dkt. # 19, at 21-22, 28.)

*§ 1983 Claims*

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-2255, 101 L.Ed.2d 40 (citing *Parratt v. Taylor*, 41 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)) and *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)). According to the United States Supreme Court's decision in *Monell v. Department of Social Services*, municipal governments and their agencies may only be held liable for injuries resulting from the municipality's unconstitutional

or illegal policies; they may not be sued under a theory of *respondiat superior*. *Monell v. Dep't of Social Services* 436 U.S. 658, 691 (1978). After *Monell*, a number of Supreme Court cases set forth some of the types of actions which can constitute official policy. Under these cases, there are at least five types of actions that can constitute such a policy: (i) direct action by the municipal legislative body[1]; (ii) actions by agencies exercising authority delegated from the legislative body (as in *Monell*); (iii) actions by individuals possessing final decision-making authority (as in *Pembaur v. City of Cincinnati*, 475 U.S. 269 (1986)); (iv) actions demonstrating a policy of inadequate training or supervision[2]; and (v) actions falling within a demonstrable "custom" of organizational behavior that causes constitutional violations.[3]

Plaintiffs need to present evidence of at least one of these five types of action sufficient for the trier of fact to reasonably find in their favor in order to withstand the summary judgment motion. Here, Plaintiffs do not allege, nor is there any evidence, that either the legislative body of the City of Paducah or the Authority itself maintained a written policy of terminating employees in retaliation for those employees' engaging in protected speech, in violation of the federal Constitution. P.A.T.S. may, however, still be held liable in that the Board of Directors constituted individuals "possessing final decision-making authority" such that their actions may be fairly attributable to the municipal agency itself. As to the act of a final decision-maker, the Supreme Court has held that "where action is directed by those who establish governmental

---

[1] "No one has ever doubted...that a municipality may be liable under §1983 for a single decision by its properly constituted legislative body..." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

[2] *See, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

[3] *See Pembaur*, 475 U.S. at 482, n.10 (quoting *Monell*). The Supreme Court has consistently maintained this possibility, although it has not upheld a §1983 action on this basis.

policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Meyers v. City of Cincinnati*, 14 F3d 1115, 1117-1118 (6th Cir. 1993). The question of whether a given municipal official is a final policymaker, the Court must look to state law. *Feliciano v. City of Cleveland*, 988 F. 2d 649, 655 (citing *Prapotnik* at 125) (6th Cir. 1993). In that case, the Court considered factors including: the statutory authority delegated to the official in question, whether the official was subordinate to another official, and whether as a matter of "custom" that official had authority to make final decisions on the issue in question. *Id.* at 655-56. The "Kentucky Transit Authority Act" provides authority for cities and other local units to establish mass transit authorities to serve the local community. KRS § 96A.020(1). According to the statute:

> Such transit authority shall constitute an agency and instrumentality for accomplishing essential governmental functions of the public body or public bodies creating and establishing the same, and shall be a political subdivision and a public body corporate, with power to contract and be contracted with, to sue and be sued, to establish, alter and enforce rules and regulations in furtherance of the purposes of its creation, to adopt, use and alter a corporate seal, and to have and exercise, generally, all of the powers of private corporations, as enumerated in KRS 271B.3-020, except to the extent the same may be inconsistent with this chapter.

*Id.* KRS § 96A.040(1) requires that "[t]he business, activities, and affairs of a transit authority shall be managed, controlled, and conducted by a board consisting of members appointed ... by the appointing authority of [the] city or county [establishing the authority]." Subsection (4) of the same section provides that the appointing authority may remove a member of the board for "inefficiency, neglect of duty, malfeasance, conflict of interest, or want of mental or physical capacity to serve." KRS § 96A.040(4). On January 22, 1980, the Board of Commissioners of the City of Paducah, Kentucky, acting under this authority, adopted Ordinance No. 80-1-1544, which established the Authority. Section 4 of that Ordinance provides that "[t]he business, activities and affairs of the Authority shall be managed, controlled and conducted by a Board

consisting of eight (8) members which shall be appointed by the Mayor, subject to approval by the Commissioners." Section 15 provides that "the Authority may enter into one or more management contracts for operating [a mass transit system], under such terms and conditions as it may determine to be proper and desirable..." Therefore, although Mr. Kitchin as General Manager (among others) had discretion to hire and terminate employees, under Commonwealth and local law the Board of Directors were the "final policymakers" as to all aspects of the management of the Authority. If the Board of Directors is ultimately adjudged liable for violations of Plaintiffs' rights under the First Amendment and § 1983, municipal liability will also attach to the Authority.

*State tort law claims*

As set forth below, the only remaining state law claim against the Authority will be the tort of wrongful discharge.[4] Defendants argue that the state law claims against the Authority should be dismissed because Plaintiffs "have not brought suit pursuant to the doctrine of respondeat superior." Although Plaintiffs' Complaint does not include the term *respondiat superior*, the complaint states a claim for wrongful discharge that survives the motion for summary judgment and establishes that the defendants who committed the acts were employees of the Authority. A fair reading of the Complaint, then, puts the Authority on notice that it is subject to tort liability for the acts of its employees if they are so held.

*§1983 Claim for Violation of Plaintiffs' First Amendment Rights*

Plaintiffs Burgess, Glisson and Turner claim that their terminations were undertaken in retaliation for Plaintiffs' decisions to exercise their right to speech protected by the First

---

[4] The tort of defamation also remains, but that claim was only made against Defendants Kitchin and Adair.

Amendment to the United States Constitution. Specifically, Plaintiffs assert that the speech in question is their reporting of "numerous safety violations in the maintenance and operation of PATS vehicles to management, the PATS Board of Directors and local government officials." (Response to Motion for Summary Judgment, Dkt. # 24, at 19). 28 U.S.C. §1983 provides a cause of action for termination in violation of a plaintiff's First Amendment rights where a plaintiff can demonstrate:

> (1) that she was engaged in a constitutionally protected activity; (2) that the defendants' adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of her constitutional rights.

*Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 965 (6th Cir. 2002) (quoting *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715 (6th Cir. 2001)). Viewing the facts in the light most favorable to the Plaintiffs, they have satisfied each prong of this test.

In *Gragg*, the Sixth Circuit held that speech is protected by the First Amendment "when it addresses a matter of public concern, and the employee's interest in making such statements outweighs the 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.*, quoting *Bailey v. Floyd Country Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997). The United States Supreme Court has held that an employee's speech addresses a matter of public concern when it is "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690 (1983). Further, the court in *Connick* held that

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel a decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 147. Also, the *Connick* court held that the determination of whether an employee's speech

addresses a matter of public concern is a question of law that "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*. at 147-48. Plaintiffs' complaints to P.A.T.S. management, the Board and City Commissioner Robert Coleman, because, according to Plaintiffs, they dealt in significant measure with concerns about public safety and the Authority's alleged noncompliance with its legal obligations respecting maintenance of its vehicles, both of which are well within the realm of the public concern. *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law."); *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 578 ("Speech on matters directly affecting the health and safety of the public is obviously a matter of public concern."); *Hoover v. Radabaugh*, 307 F.3d 460, 466 ("When an institution oversees some aspect of public safety, the correct operation of that institution is a matter of public concern.") (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir.1999)).  The evidence indicates that Plaintiffs also lodged complaints about the "management style" of Defendants Kitchin and Adair and the office environment more generally; if such complaints predominated over the Plaintiffs' safety concerns, the speech would not have been protected.  Given the facts on the record, the Court cannot say as a matter of law that Plaintiffs' personal interests as employees in their workplace's general environment or their specific complaints about Defendant Kitchin's management style predominated over their safety concerns and their concerns about compliance with regulations governing P.A.T.S.  The Court is mindful that on a motion for summary judgment "the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985); *Smith v. Hudson*, 600 F.2d 60, 63 (6th

Cir.1979).  We also note that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  Plaintiffs assert that safety concerns and legal compliance were not dominated by their personal interests when making their decisions to seek meetings with the Board and to voice their concerns to the City Commissioner.  Based upon the information available, which did not include records of all the meetings and does include conflicting reports from the different sides, the Court cannot say *as a matter of law* that this was not so; at trial, however, when presented with testimony and given the opportunity to evaluate the credibility of the various parties, a jury could find as a matter of fact that it was not.

This does not, however, end the inquiry on the first prong of the *prima facie* case.  If the speech addressed a matter of public interest, it must also survive the balancing test set forth in *Pickering v. Board of Education*.  391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).  The *Pickering* court described this test as "…a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. at 568.  Defendants do not argue (nor does the evidence indicate) that Plaintiffs' speech constituted a serious disruption to their job performance or to the operation of the organization as a whole.  The Commonwealth's interest in efficiency, then, was not significantly enhanced by its curtail of Plaintiffs' speech; weighed against the public safety implications of the speech, the *Pickering* test favors the interests of the Plaintiffs.

The second prong of the *prima facie* case requires Plaintiffs to show that the "adverse action caused [them] to suffer an injury that would likely chill a person of ordinary firmness

from continuing to engage in" the protected speech.  *Gragg*, 289 F.3d 965.  In the Sixth Circuit, termination is such an action.  *Hoover v. Radabaugh*, 307 F.3d 466-67 (citing *Mattox v. City of Forest Park*, 183 F.3d 521).

The third prong requires Plaintiffs to "point to specific, nonconclusory allegations reasonably linking [their] speech to employer discipline."  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997) (internal quotation marks and citation omitted).  However, "[w]hen the defendants' intent is at issue, summary judgment is particularly inappropriate."  *Hoover v. Radabaugh*, 307 F.3d 467 (citing *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir.1986) (internal quotation marks omitted)).  Defendants argue that Kitchin and Adair were unaware of the Plaintiffs' protected speech and, therefore, could not have terminated them in retaliation therefor.  The record contains conflicting information as to when Kitchin and Adair learned of the Plaintiffs' letters.  Kitchin and Adair claim that they did not learn about the contents of the letters until after Plaintiffs' terminations.  Plaintiff Turner, however, testified that in May 2002 (prior to any terminations) she attended a meeting with both Kitchin and Adair at which Kitchin asked her which employees signed the February 21, 2002 letter to the Board, and she told him which employees had signed.  (Affidavit, Exhibit 14 to Plaintiffs' Response to Defendants' Motion for Summary Judgment, Dkt. # 24.)  The record also contains a memorandum, apparently prepared by Defendant Adair, which reads:

> On Monday June 3, 2002 Gary and I held a meeting with the office staff to discuss the lay-offs and the letters that went to the board of directors'. [sic]  He told everyone in the meeting that if anyone had any problems with him, Kim or PATS please come to him, and follow the chain of command.  Kristin and Karen said that they were scared to come and talk to him cause they might lose their job.

(Exhibit 7 to Dkt. #24).  The memo lists Plaintiffs Glisson and Burgess and Defendants Adair and Kitchens as having been present.  If the memo accurately reflects the discussion in the

meeting, then, Defendants Adair and Kitchin were aware of both of the letters sent by Plaintiffs to the Board before any of the terminations took place. An affidavit from Jessica McAlpine, then on the office staff at P.A.T.S., testifies that she was at the June 3 meeting, and that at that meeting Defendant Kitchin "wanted to find out from the office staff who sent the second letter to the board" and that "Karen [Glisson] told him the letter was about the safety of the buses and how bad they were for the Quilt Show. When she told him about this he really got angry." (Exhibit 9 to Dkt. # 24, at ¶ 3). Viewing the facts in the light most favorable to Plaintiffs, these allegations, combined with Plaintiffs' allegations that they had consistently attempted to address their safety concerns with Kitchin directly and the close temporal proximity between the speech and the Plaintiffs' terminations, reasonably link the decisions to terminate Plaintiffs' employment to their exercise of their First Amendment right to engage in protected speech.

Because Plaintiffs have presented genuine issues of material fact with respect to each prong of the *prima facie* case for termination in violation of their First Amendment rights, summary judgment as to these claims is denied.

*Official Immunity: Claims against individual defendants*

Defendants raise claims of immunity for each of the individual defendants. The court will analyze these claims for Defendants Adair and Kitchin separately, and then for the members of the Board of Directors (Defendants Whittemore, Davis, Cox, France, Grumley, Morse, Murphy and Carner) as a group, since the analysis for all eight will be the same.

*Defendants Gary Kitchin and Kim Adair*

Defendants argue that they are entitled to qualified immunity because "...government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S., at 322, 95 S.Ct., at 1001).[5] In the Sixth Circuit:

> [t]he procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996)).

Again viewing the facts in the light most favorable to the Plaintiffs, Defendant Kitchin is not entitled to qualified immunity. If the facts as ultimately found by the jury support Plaintiffs' §1983 retaliation claim, a constitutional violation will have occurred. Further, the right violated will have been a clearly established right of which a reasonable official would have known. *Hoover v. Radabaugh*, 307 F.3d 469 ("...a reasonable official would know that terminating an employee with the motivation, even in part, of quieting the plaintiff's public speech about the illegal activities of the Department violates the Constitution."); *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 580 ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern..."). If the facts are as Plaintiffs allege them to be, no reasonable public official could conclude that Plaintiffs speech addressed matters squarely within the public concern;

---

[5]The *Harlow* court noted that, although it announced this principle in a case involving a suit brought directly under the Constitution against federal officials, the principle is equally applicable to state officials sued pursuant to the authority granted in 42 U.S.C. §1983. *Id.* at n.30.

therefore, no reasonable official could believe that terminating them on that basis is within the law.

*The Board of Directors*

The following eight individuals were sued in their individual and official capacities as members of the board of directors of the Paducah Transit Authority: Tommy Whittemore, Mark Davis, William Cox, Rollie France, P.J. Grumley, Roberta Morse, Danny Murphy, and Bryan Carner (collectively, the "Board").  As to these individuals, Defendants argue that the Board exercises no control over hiring/firing decisions and because the complaint and deposition testimony reveal no charges of improper behavior on the part of any board member individually, even a constitutionally improper firing that is actionable under §1983 could not give rise to liability on the part of these individuals.  Alternatively, Defendants argue that the members of the board are entitled to qualified official immunity even if they did act in contravention of the Plaintiffs' constitutional rights or acted tortiously.

As discussed in the section dealing with the Authority's liability, supra, the Board had the authority to review all termination decisions made by the managers.  In this case, the evidence indicates that the Board reviewed and upheld the termination decisions made by Kitchin through the grievance process, and that Plaintiffs' safety concerns were brought to the attention of the Board.  Therefore, insofar as Plaintiffs establish that Kitchin violated their constitutional rights, the Board of Directors will also be liable.

***Wrongful Discharge***

In Kentucky, the tort of wrongful discharge is limited in scope; "absent explicit legislative statements prohibiting the discharge," it applies only where either (1) "...the alleged

reason for the discharge ... was the failure or refusal to violate a law in the course of employment," or (2) "...the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985) (quoting *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 316 N.W.2d 710 (Mich. 1982) (internal quotation marks omitted)).  In this case, Plaintiffs allege that they were terminated in part because: (1) they refused to falsify business records in violation of KRS 517.050; (2) they refused to falsify records to be presented to the Commonwealth agencies that regulate the maintenance of PATS buses in violation of KRS 523.100; and (3) they refused to operate buses that did not meet the repair standards prescribed by the Federal Motor Carrier Safety Administration, which promulgates regulations relating to the maintenance of motor carriers, specifically 49 CFR § 396.7.[6]  Defendants assert that Plaintiffs were never asked to falsify records and were never required to operate buses in violation of regulations.

      The situation that faces the Court with regard to Plaintiffs' wrongful discharge claims is similar to the one presented by Plaintiffs' § 1983 claims: the record is conflicting, and both Plaintiffs and Defendants appear to contradict themselves at times.  Plaintiff Turner asserts that during 2001, she told Defendant Kitchin that the brakes on one of the buses she was driving were so bad that it took her two blocks to stop, and that his response was not to put another bus in service but simply to warn her to drive carefully. (Turner depo., Dkt. # 44, pp. 138-140).  Plaintiffs also assert that they knew of buses being returned to service by Kitchin when the vehicle inspector had specifically ordered them out of service pending repair.  Plaintiffs also assert that some vehicles were reported to the Commonwealth Office of Transportation Delivery,

---

[6]The Kentucky Court of Appeals has held that the tort of wrongful discharge does not encompass protection for

the state's certifying authority, as in sound mechanical condition when in fact they were not because Kitchin would not permit the employees to alter the forms to reflect the disabled status of the vehicles. (Plaintiffs' Response to Defendants' Motion for Summary Judgment, Dkt. # 24, pp. 34-35.) Refusal to falsify a business record, which falsification would be a violation of KRS 517.050, has been held to be a statute which can give rise to a wrongful discharge claim. *Northeast Health Management, Inc. v. Cotton*, 56 S.W.3d 440, 447 (Ky. App. 2001). It stands to reason that KRS 523.100 would present a similar situation; however, Kentucky courts have held that federal regulations, because they are neither Kentucky statutes nor constitutional provisions, cannot be a basis for such an action. *Shrout v. The TFE Group*, --- S.W.3d ----, 2005 WL 736262 (Ky. App. 2005); *Alderman v. Bradley*, 957 S.W.2d 264, 266 (Ky. App. 1997).

Viewing the facts in the light most favorable to the Plaintiffs, the Court cannot say as a matter of law that Plaintiffs were not discharged due to their refusal to violate KRS 517.050 or KRS 523.100.

*Intentional Interference with Employment Relations*

Plaintiffs' Complaint contains a charge of intentional interference with a contractual employment relationship. Defendants argue that Kentucky does not recognize such a tort. As our sister court in *Leary v. Daeschner* noted in a decision dealing with an employment action:

> [t]he Restatement of Torts 2d, section 766 is recognized in Kentucky as establishing the elements of tortious interference with business contracts and relationships:
> ... except as stated in Section 698, one who, without a privilege to do so, induces or otherwise causes a third person not to
> (a) perform a contract with another, or
> (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.
> *McCarthy v. KFC Corporation*, 607 F.Supp. 343, 345 (W.D.Ky.1985), quoting the Restatement of Torts 2d. "In order to prove a claim for tortious interference, [a plaintiff] must demonstrate that 'a wrongdoer intentionally meddle[d] with an agreement without justification or invade[d] contractual relations by engaging in significantly wrongful conduct.' " *Hunt Enterprises, Inc. v. John Deere Industrial Equipment Company*, 18

>F.Supp.2d 697, 702-03 (W.D.Ky.1997), quoting, *Blair v. General Motors Corp.*, 838 F.Supp. 1196, 1200 (W.D.Ky.1993).

186 F.Supp.2d 774 (W.D.Ky. 2001). That court also held, and we agree, that a person "acting under color of state law" for purposes of § 1983, as Plaintiffs claim Defendants were, cannot also be a third party who interferes with a contract under the *Restatement*. *Id.* at 777. All Defendants, insofar as they may have acted on Plaintiffs' contractual relationship with P.A.T.S., were acting as agents of the Authority and therefore could not have induced a breach of a contract to which they were a party. Therefore, summary judgment is appropriate on Plaintiffs' claim of intentional interference with employment relations.

*Defamation*

Plaintiffs assert that when Kitchin and Adair released copies of the "disciplinary action memoranda" dealing with their termination to the Paducah Sun newspaper, it committed the tort of defamation. In *Columbia Sussex Corp. Inc. v. Hay*, the Court of Appeals of Kentucky held that a defamation cause of action requires:

1. defamatory language
2. about the plaintiff
3. which is published and
4. which causes injury to reputation.

627 S.W.2d 270, 273 (Ky. App. 1981). The court also noted that "[d]efamation is a quasi-intentional tort, i.e., with the exception of the element of publication, its basis is in strict liability. Publication, however, must be shown to have been done either negligently or intentionally. The emphasis is not upon the meaning of the remarks as being negligently or intentionally defamatory but rather upon the manner in which such remarks were conveyed." *Id*. at 273-74. Defendants note that, in Kentucky, truth is a complete defense to an action for libel. *Bell v. Courier-Journal & Louisville Times Co.*, 402 S.W.2d 84 (Ky. 1966).

Defendants, then, assert two separate defenses to the defamation claim: one, that the "publication" of the document (i.e., the transmission of the document to the reporter from the Paducah Sun) was not negligent or intentional because it was done pursuant to an Open Records Act request; and two, that the documents accurately reflected the reasons for which Plaintiffs were terminated and were therefore truthful. Plaintiffs respond that: (1) they are not required to allege or prove damages because the libelous statements are actionable *per se*, so damages are presumed; (2) the documents were "preliminary" and therefore not subject to disclosure under the Open Records Act; and (3) pursuant to P.A.T.S. policy, the documents were not subject to disclosure without Plaintiffs' signed consent.

Inasmuch as Plaintiffs have alleged an issue of fact on their wrongful termination claim, it cannot be said that, as a matter of law, the memoranda reflected the "truthful" reasons for Plaintiffs' termination, which would allow Defendants to avail themselves of the defense of truth. As to Plaintiffs' allegations that the documents constituted *per se* libel, we must determine "if they either directly or indirectly import fraud, dishonesty, or sharp or unethical practices on the part of the plainitff." *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1083 (W.D.Ky. 1995) (quoting *White v. Hanks*, 255 S.W.2d 602, 603 (Ky. 1953)). As to Plaintiff Burgess, the documents allege "dishonesty, personal use of the Paducah Area Transit System's property, and improper conduct." (Plaintiff's Response to Defendant's Motion for Summary Judgment, Exhibit 29.) As to Plaintiff Turner, the documents state that her conduct was "dishonest and improper and constituted an off duty activity that discredited [sic] and allowed the terminated employee improper access and disclosure of confidential information." *Id.* As to Plaintiff Glisson, the documents charge "inefficiency, improper conduct, and neglect of duty." *Id.* The released documents pertaining to Plaintiffs Burgess and Turner do constitute libel *per se*; the

documents relating to Plaintiff Glisson do not.  Because Plaintiff Glisson has not alleged any facts about damage to her reputation done by the release of these documents, summary judgment on her claim is appropriate.

The publication element of the test is the remaining element to be examined.  For publication to be actionable, it must be either negligent or intentional.  *Columbia Sussex Corp. Inc. v. Hay*, 627 S.W.2d 273-74.  Defendants argue that Kentucky's open records statute, KRS §§ 61.870, *et seq.*, required the disclosure of the disciplinary notices, making intentional or negligent disclosure on the part of Defendants Adair and Kitchens impossible.  Plaintiffs argue that because they were released prior to the Plaintiffs' grievance hearings, the documents were "preliminary" within the meaning of KRS § 61.878(j) and thus exempted from the release requirements.  The statute reads, in relevant part:

> The following public records are excluded form the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction ...: preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended.

*Id.*  The statute also grants authority to the Commonwealth Attorney-General to issue opinions where disputes arise over open records requests.  A review of those opinions suggests that the main criterion used to determine whether a given document is "preliminary" in nature is whether it represents the final agency action on the matter.  See, e.g., OAG-88-32, OAG 87-64, OAG 87-24, OAG 89-69.  The grievance procedures allow employees to appeal decisions of the general manager to the Board of Directors; within thirty days, "the Board shall conduct a hearing on all issues involved and shall respond in writing to the employee."  Further, "[t]he decision of the Board shall be the final procedure for the complainant at the local level." (P.A.T.S. Grievance Procedure, Exhibit 30 to Dkt. # 24, Plaintiffs' Response to Defendants' Motion for Summary Judgment, at 7.3(B)(5) and (C)).  Although the Disciplinary Action letters may have been Mr.

Kitchin's final action on the matter, they were clearly not the *agency*'s final action. The letters note a "Recommended Effective Date of Termination" and Mr. Kitchin's decisions were subject to review by the Board of Directors under the grievance procedure. Therefore, at the time of the disclosure of the documents, they were "preliminary" under the statute and not subject to the statute's disclosure requirements. Because the open records statute did not require disclosure, and the Court cannot say as a matter of law that the statements in the letters were true, Plaintiffs Burgess and Turner have presented a jury issue on their defamation actions.

*Outrage*

Plaintiffs' Complaint asserts a claim for the tort of outrage. (Complaint, Dkt. #1 at 12). In their depositions, Plaintiffs Turner, Glisson and Tate all agreed to dismiss their claim of outrage; only Plaintiff Burgess indicated that she intended to pursue her claim. Kentucky has adopted the definition of this tort from the Restatement (Second) of Torts, which defines one who commits the tort of outrage as: "...one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another...." Where a "traditional" tort is available to compensate a plaintiff for a defendant's behavior, Kentucky courts have held that outrage should not be. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993). In their response to the motion for summary judgment, Plaintiffs do not present evidence of any behavior which would fall in the category of "extreme and outrageous" while falling outside of the other torts alleged. Therefore, the remaining claim for the tort of outrage must also be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**. An appropriate order shall issue.