UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:03-CV-166-R

KIMBERLY BURGESS, et al.                                                                PLAINTIFFS

v.

PADUCAH AREA TRANSIT AUTHORITY, et al.                                  DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Paducah Area Transit Authority, Gary Kitchen, Tommy Whittemore, Mark Davis, William Cox, Rollie France, P.J. Grumley, Roberta Morse, Danny Murphy, and Bryan Carner's Renewed Motion for Summary Judgment (Docket #144). Plaintiff has responded (Docket #150). Defendants have replied (Docket #156). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Renewed Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

The Paducah Area Transit Service ("PATS") is a mass transit authority serving the area around Paducah, Kentucky. PATS is overseen by a Board of Directors ("the Board"), although day-to-day operations are controlled by general manager Gary Kitchin. Board members are appointed by the mayor, subject to approval by the City Commission. Any member of the Board may be removed by the City Commissioners for inefficiency, neglect of duty, malfeasance, conflict of interest, or want of mental or physical capacity to serve.

Plaintiff Karen Glisson was employed by PATS as a data entry clerk and bus driver. Her duties included answering the telephone, preparing billing for the Medicaid program, and driving a bus at least three or four times a week. The following are the facts, as set out by Plaintiff.

In 2001 and 2002, Plaintiff, along with other PATS employees, notified Kitchin of various mechanical problems with PATS buses. Plaintiff states that the mechanical problems posed a danger to the members of the public who relied on PATS buses for transportation. She also states that PATS has a responsibility to monitor the condition of the vehicles, facilities, and equipment that it operates.

On February 21, 2002, Plaintiff, along with eight other PATS employees sent a letter to the Board. The letter requested that the Board meet with the employees to discuss the employees' issues with PATS management. The letter states that if these issues were not brought to the Boards attention, it would do a disservice to the well being of the PATS organization. While the letter does not specifically state what issues with PATS management the employees wished to address, Plaintiff states that the letter was sent in part because Kitchin refused to address the employees' safety concerns. Other issues that the employees intended to raise with the Board included their concerns with Kitchin's management style and the overall office environment.

In May 2002, Plaintiff drafted a second letter on behalf of the same employees to send to the Board. This letter was received by Danny Murphy, a Board member. The letter was similar to the first letter, in that it attempted to set up a meeting with the Board to discuss several issues of poor business practices at PATS that Plaintiff felt were detrimental to the future well being of the PATS organization. Though this letter also did not mention safety issues specifically, Plaintiff states that the Board members were aware that such issues were among Plaintiff's concerns.

On July 19, 2002, Plaintiff, along with other PATS employees, met with Paducah City

Commissioner Robert Coleman. At the meeting, Plaintiff notified Coleman of the safety issues previously brought to the attention of Kitchin and the Board members.

This meeting led Coleman to write a letter to the Board. In the letter, Coleman states that the purpose of the meeting with Plaintiff was to seek solutions to problems with their hostile and unfair work environment. Among the complaints that Coleman relayed to the Board were the allegations that Kitchin forced PATS drivers to operate unsafe vehicles.

Plaintiff was terminated from her employment with PATS on August 14, 2002. Plaintiff claims she was terminated from her public employment position in retaliation for her statements concerning the safety of PATS vehicles, in violation of her First Amendment rights.

## PROCEDURAL BACKGROUND

"The First Amendment protects a public employee's right, in certain circumstances, to speak as citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The Sixth Circuit has developed a three-step test for analyzing a public employee's First Amendment retaliation claim. *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 361 (6th Cir. 2007). A plaintiff must first show that his speech was constitutionally protected as a matter of law. *Id.* This is done by demonstrating that the speech "touches on a matter of public concern," and that the plaintiff's "interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer." *Id.* If the speech is protected, a plaintiff must show that his termination "would chill an ordinary person in the exercise of his First Amendment rights." *Id.* Finally, the plaintiff must "present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or dismiss." *Id.*

3

In its May 23, 2005, Memorandum Opinion, the Court denied Defendants' Motion for Summary Judgement as to Plaintiff's First Amendment retaliation claim, finding that the above elements were satisfied. Defendants have now filed a Renewed Motion for Summary Judgment, arguing that under Supreme Court precedent, Plaintiff's speech was not constitutionally protected under the First Amendment as a matter of law.

In May of 2006, the Supreme Court decided *Garcetti v. Ceballos*, 547 U.S. 410 (2006), which clarified under what circumstances a public employer's speech is constitutionally protected. *Garcetti* holds that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Therefore, the Court must decide whether the plaintiff was speaking "as a citizen" or speaking as part of her job, before deciding whether the remaining elements are satisfied. *Weisbarth v. Geauga Park District*, 499 F.3d 538, 547 (6th Cir. 2007). *See also Mills v. City of Evansville,* 452 F.3d 646, 647-648 (7th Cir. 2006).

When the Court denied Defendants' Motion for Summary Judgement, *Garcetti* had not yet been decided. In determining that denial of the motion was appropriate, the Court's analysis focused on the public importance of Plaintiff's safety concerns. The Court then balanced the public safety implications of Plaintiff's speech against the interest of PATS to have an efficient workplace. The Court did not determine if Plaintiff's speech was pursuant to her employment responsibilities, as required for a public employee's First Amendment retaliation claim under *Garcetti*. Therefore, the key issue before the Court in the present motion is whether Plaintiff's expressions concerning the safety and maintenance of PATS vehicles were made pursuant to her

4

duties as data entry clerk and bus driver.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

While *Garcetti* requires the Court to determine if Plaintiff's speech was conducted

pursuant to her employment responsibilities, it does not articulate a comprehensive framework for defining the scope of an employee's duties. *Garcetti*, 547 F.3d at 424. *Garcetti* does state that in defining the scope of Plaintiff's duties, "[t]he proper inquiry is a practical one." *Id.* The Sixth Circuit, in applying *Garcetti*, has examined the conduct at issue in light of the facts surrounding the communication as a whole. *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 364 (6th Cir. 2007) ("The context of the memo as a whole is best characterized as that of a disgruntled employee upset that his professional suggestions were not followed as they had been in the past."). The type of facts that the Sixth Circuit has found relevant in determining if a communication is pursuant to an employee's professional responsibilities include the plaintiff's "employment duties, the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter." *Weisbarth*, 499 F.3d at 546.

      Plaintiff's communications with Kitchin concerning the safety and maintenance of PATS vehicles fall squarely into Plaintiff's job responsibilities. It is not relevant if Plaintiff's official job title was data entry clerk or demand response driver. *See Garcetti*, 547 F.3d at 424 ("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform"). What is relevant is that Plaintiff drove a bus several times a week, and was expected to notify management of any safety issues that arose in the course of her work. Therefore, when Plaintiff did in fact notify Kitchin of her safety concerns, Plaintiff was performing her responsibility as a PATS employee, and the notification was not constitutionally protected.

      Plaintiff's letters to the Board were also written pursuant to her professional responsibilities. While Plaintiff states she was concerned about Kitchin's failure to address the employee's safety issues, Plaintiff also acknowledges that the office environment was an issue

the employees intended to bring to the Board's attention. The letters were written to the Board of Directors, which is responsible for the overall operation of PATS. The letter states the issues the employees wished to discuss would affect the overall well being of PATS.

The letters were an attempt by a group of employees to convince the Board to take action to correct what they saw as a serious problem with the conduct of their general manager. Some of the employees' complaints, such as their concerns about Kitchin's management style, do not touch the public concern. Such concerns "reflect[] nothing more than 'the quintessential employee beef: management has acted incompetently." *Haynes*, 474 F.3d at 365 (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988).

The issues that they intended to raise which touch the public concern, the safety of the buses, falls within Plaintiff's job responsibilities. In contacting the Board, Plaintiff was attempting to notify her employer that her supervisor was failing to take action on safety and maintenance problems that fell within her area of responsibility. In doing this, Plaintiff was acting within her employment responsibilities, and was therefore not protected by the First Amendment.

The final example of conduct Plaintiff argues is protected by the First Amendment is Plaintiff's meeting with the City Commissioners. Plaintiff's communications with the City Commissioners had the same general subject matter as her communications with the Board. The meeting was a discussion of Plaintiff's job related concerns. The letter Coleman sent to the Board in response to this meeting states that the purpose of the meeting was to reach a solution to a hostile, tense, and unfair work environment.

The concerns Plaintiff brought up with the City Commissioners were a mixture of public

7

and private issues, just like the concerns she intended to raise when writing her letters to the Board. Some of the complaints touched the public concern, such as their contention that Kitchin forced drivers to drive unsafe vehicles. Others were internal matters, such as their complaint that Kim Adair, PATS operations manager, receives special treatment from Kitchen. The letter also states PATS must have policies and procedures that are fair to employees.

Unlike the Board, the City Commissioners are not a part of the PATS organization. However, PATS is not independent of the City Commission. The city of Paducah established PATS, and PATS Board members are appointed by the mayor and approved by the City Commission. Particularly relevant to the Court's analysis is that the City Commission has the power to remove members of the Board. As stated above, some of the employees' concerns were purely internal complaints. This indicates that the employees were not acting as citizens in contacting Coleman in his capacity as a local elected official, but were instead acting as an employee in contacting a person with the power to solve their job related problems when they felt that the Board was not taking proper action.

Furthermore, the Plaintiff's communications with the City Commissioners are inextricably intertwined with Plaintiff's communications with the Board. The meeting with the City Commissioner was not a discrete meeting to discuss an issue of public concern. It was instead the culmination of Plaintiff's attempts to solve her job related problems, notwithstanding the fact that some of those job related problems were of public significance.

"The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict . . . the liberties employees enjoy in their capacity as private citizens." *Garcetti*, 547 U.S. at 419. However, there is no constitutional cause of action in "every

statement a public employee makes in the course of doing his or her job." *Id.* 426. The overall context of the communications at issue in this case indicate that Plaintiff was acting as a public employee, not as a private citizen. Plaintiff raised a series of job related issues, which were a mixture of public and private concerns. Her issue with management that touched the public concern, the safety of the buses, was also an issue that fell within her responsibilities as a bus driver. When Kitchen failed to take any action after being notified of her concerns, she contacted the entity which had authority over him, the Board. When the Board refused to take action, she contacted the entity that had authority over the Board, the City Commission. These are the actions of an employee, raising her work related concerns to the person or entity which could use its authority to rectify the situation.

"[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420. When the facts are examined as a whole, the Court finds that in bringing her concerns over the maintenance and safety of PATS vehicles to her supervisor, the Board, and the city commission, Plaintiff was acting pursuant to her responsibilities to her employer. Therefore, under *Garcetti*, Plaintiff's conduct was not protected by the First Amendment as a matter of law, and summary judgement is appropriate.

This has been protracted litigation. After previous rulings the losing party has then brought forth additional facts and law not previously argued. The Court has added to the delay by not being as timely as it should have been in some rulings. The Court believes that all legal issues have now been thoroughly discussed, and the Court will not entertain any additional motions to reconsider.

9

## CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.